IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:

GROJ of the West, Inc. f/d/b/a
Appliance Direct 1, inc., f/d/b/a             CASE NO. 6:10-bk-09695-KSJ
Appliance Direct, Inc.,                      CHAPTER 7

Debtor.
_____/

## MOTION FOR SUBSTANTIVE CONSOLIDATION

Comes now, YERVANT COX, et al.,[1] Creditors in the above-captioned bankruptcy (hereinafter referred to as "Creditors"), by and through their undersigned counsel, in the interest of justice and for the benefit of the Creditors, hereby file this Motion for Substantive Consolidation, and as grounds, state:

### SUMMARY OF ARGUMENT

The DEBTOR has filed this action in an attempt to avoid its debts to certain creditors while at the same time continuing its business activities and protecting other creditors and lines of credit. While the other entities making up the APPLIANCE DIRECT enterprise continue to enjoy a massive stream of income derived in part from the use of DEBTOR's assets, the DEBTOR seeks to eliminate certain debts through the improper use of the Bankruptcy Court. Hence, the Creditors respectfully request this Court to enter an Order substantively consolidating the assets and liabilities of the APPLIANCE DIRECT enterprise into GROJ of the West, Inc.'s (hereinafter referred to as "DEBTOR") estate effective on the date the DEBTOR filed its Voluntary Petition, *nunc pro tunc*, pursuant to Chapter 7 of the Bankruptcy Code on the grounds that the related corporate entities making up the enterprise ignored corporate formalities,

---
[1] A complete list of the Creditors making this Motion for Substantive Consolidation is filed herewith as Exhibit "A."

commingled funds and assets, conducted intercorporate transactions sufficient to warrant substantive consolidation. Specifically, the class of Creditors to which the Movants belong were utilized across the APPLIANCE DIRECT enterprise without regard to the separate corporate forms of each retail location.

## BACKGROUND FACTS

**A. Monies owed to Creditors.**

Collectively, the Creditors hold the largest claims in this matter.[2] Creditor, YERVANT COX,[3] and others similarly situated, sued DEBTOR, for unpaid overtime compensation pursuant to Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, on February 11, 2008. *See Yervant Cox, et al. v. Appliance Direct, Inc.*, Case No.: 6:08-CV-216-ORL-22DAB, United States District Court, Middle District of Florida, Orlando Division. A Judgment in the participating Creditors' favor was entered in the *Cox* case on March 9, 2010, for the total sum of $126,574.28. (*Id* at Doc. 166). A second Judgment was entered in the *Cox* case on May 4, 2010, awarding the participating Creditors $66,342.50 for attorney's fees. (*Id* at Doc. 171). Thereafter, on May 7, 2010, the Clerk of the Court taxed DEBTOR with costs in the amount of $12,823.18. (*Id* at Doc. 173).

Creditors, BYRON GARDINER, JUSTIN GROVE, SCOTT KANE, WENDY KANE and JOHN WROBEL, sued DEBTOR, for unpaid overtime compensation pursuant to Fair Labor

---

[2] Interestingly, DEBTOR has failed to include a creditor holding a $240,219.38 judgment in its mailing matrix. The judgment was entered on January 15, 2010, in the Lee County Circuit Court, Case No.: 09-CA-2170, and no suggestion of bankruptcy has been filed in that case. Creditors believe that this judgment was not listed as the entity Appliance Direct XXVI, Inc., was also a party to that case and a judgment co-debtor. However, this judgment supports the Creditors' assertion that the DEBTOR's business dealings are entangled with the other entities making up the APPLIANCE DIRECT enterprise.

[3] YERVANT COX was designated as the representative plaintiff in that FLSA case and was authorized by the district Court to send notice to members of the respective class of delivery drivers employed by the DEBTOR during the relevant statutory period.

Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, on January 29, 2009. *See John Braman, et al. v. Appliance Direct, Inc.*, Case No.: 6:09-CV-179-ORL-28KRS, United States District Court, Middle District of Florida, Orlando Division. That case was been stayed pursuant to this action, but was previously scheduled for trial in July of 2010.

**B. DEBTOR changed its name on the eve of filing its Voluntary Petition.**

On May 28, 2010, DEBTOR filed Articles of Amendment to Articles of Incorporation with the Florida Department of State, Division of Corporations, which changed DEBTOR's name from Appliance Direct, Inc., to GROJ of the West, Inc. *See* Exhibit "B." *On that same date*, DEBTOR's Chief Executive Officer, Sei Hwan Pak, executed DEBTOR's Voluntary Petition filed herein.[4] (Doc. 1).

**C. DEBTOR is part of the APPLIANCE DIRECT enterprise.**

DEBTOR is part of the APPLIANCE DIRECT enterprise, which is engaged in the retail sale of household appliances throughout the State of Florida. *See* Exhibit "C," ¶ 2; Exhibit "D." The retail stores in the APPLIANCE DIRECT enterprise allegedly operate through separate corporate entities. *See* Exhibit "C," ¶ 3. However, as detailed herein, DEBTOR and the other entities making up the enterprise have disregarded corporate forms and utilized the Creditors throughout the enterprise and the enterprise as a whole reaped the benefits of the Creditor's labor. Moreover, the corporate entities making up the APPLIANCE DIRECT enterprise share a mutual website, credit lines, assets, marketing and other resources.

---

[4] Creditors believe the name change was solely for the purpose of avoiding negative publicity to the APPLIANCE DIRECT enterprise. Otherwise, there is no logical reason to change the name of a bankrupt corporate entity on the same date that the Voluntary Petition for bankruptcy is executed by the most senior corporate officer and director.

### D. Entities within the APPLIANCE DIRECT enterprise pay the debts of the DEBTOR.

There is evidence that certain corporate entities within the APPLIANCE DIRECT enterprise pay some of the debts and liabilities of the DEBTOR. *See* Composite Exhibit "F." The Court should note that the DEBTOR argued in the District Court that the claims of Creditors referred to in Exhibit "F" were moot due to its alleged full tender of wages. The checks submitted to the District Court that allegedly represented full tender of wages were from an entity named Appliance Direct Management, Inc. The Court should also note that the name "Delivery Direct" is set forth as the client name on one of the personnel documents. *See* Exhibit "F," pg. 5. More importantly, the Court should take notice that the client numbers listed in the documents are different, which suggests that the Creditors were working at different retail stores, even though the DEBTOR claims them as its employees. *Compare* Exhibit "F," pg. 5, with Exhibit "F," pg. 19 (client numbers 51480 and 51458). Hence, the employees were working across the APPLIANCE DIRECT enterprise without regard to separate corporate forms.

### E. The APPLIANCE DIRECT website.

Despite having filed its Voluntary Petition pursuant to Chapter 7 of the Bankruptcy Code, DEBTOR has continued to engage in business activities and utilize its assets to further the business interests of the **<u>entire</u>** APPLIANCE DIRECT enterprise. The APPLIANCE DIRECT website makes several references to "Appliance Direct, Inc.," and states that it is copyrighted.[5] The website provides marketing for the **<u>entire</u>** APPLIANCE DIRECT enterprise. *See* Exhibit

---

[5] The website specifically states: At Appliance Direct®, Inc It is our commitment to deliver quality products and services to our customers through an organization whose number one priority is customer satisfaction. In short, our customers are the most important people in our business, and we are dependent on them.

"C." The "Appliance Direct" service mark is **owned** by the DEBTOR, yet it is currently being utilized by the **entire** APPLIANCE DIRECT enterprise. *See* Exhibit "C," "D," and "E."[6] There is no doubt that the DEBTOR owns the service mark and the website as its President, Mark Salmon, filed the renewal documents with the USTPO on July 13, 2009, and stated that the "Owner requests that the registration be renewed for the goods identified above." *See* Exhibit "K." Hence, the **entire** APPLIANCE DIRECT enterprise shares and utilizes the assets of the DEBTOR for pecuniary gain. Despite this, the DEBTOR seeks the protection of this Court.

### F. DEBTOR is the only entity in the APPLIANCE DIRECT enterprise seeking bankruptcy protection.

According to its website, the APPLIANCE DIRECT enterprise has "over $100 million in sales." *See* Exhibit "D," pg. 3. Yet the DEBTOR has filed a skeleton Voluntary Petition in this matter and stated, under oath, that the assets of the DEBTOR are between $0.00 and $50,000.00. (Doc. 1). Hence, despite having over $100 million in sales, DEBTOR is the only entity within the APPLIANCE DIRECT enterprise claiming to be bankrupt.

### G. The retail stores making up the APPLIANCE DIRECT enterprise share employees.

The retail stores making up the APPLIANCE DIRECT enterprise share employees. *See* Exhibit "C," ¶¶ 10-11. While the employees are lead to believe they are employed by the DEBTOR, the reality is that their payroll is processed through Gevity under various other corporate names such as Delivery Direct, Inc. And, some, if not all, of the funding for payroll is

---

[6] In the event the DEBTOR attempts to argue that it has assigned the service mark to some other person or entity, no such assignment is on file with the USTPO.

believed to be provided from Appliance Direct Management, Inc. *See* Composite Exhibit "F."[7] In fact, as detailed in Section D, *supra*, some of the Creditors making this Motion have documents in their personnel files reflecting the DEBTOR as their employer as well as documents reflecting APPLIANCE DIRECT and an entity named Delivery Direct, Inc., as the employer. Further, the employment documents for the Creditors state that they are being executed by the Creditor "being an employee of APPLIANCE DIRECT®, Inc., or employed at one of the associated companies." *See* Exhibit "G."[8] While DEBTOR admitted in the *Cox* case that it employed the Creditors, it has also stated that each retail store operates through its own separate corporate entity. *See and compare Cox* at (Doc. 1 and 11); and, Exhibit "C," ¶ 3. Nevertheless, many of the Creditors the DEBTOR has admitted employing actually performed work for the benefit of the APPLIANCE DIRECT enterprise at different retail stores—the same retail stores DEBTOR claims are operated through separate corporate entities.

Amazingly, in the three year period prior to February 11, 2008, DEBTOR employed 232[9] delivery drivers for the APPLIANCE DIRECT enterprise. Hence the number of delivery drivers alone demonstrates that the DEBTOR and the other entities of the APPLIANCE DIRECT enterprise shared the benefits of the Creditors' work.

---

[7] The Court should note that the tender of payment for wages was made via a check from Appliance Direct Management, Inc. The personnel documents have Appliance Direct, Inc., and "Delivery Direct" listed in them. Finally, DEBTOR has made a judicial admission that the creditors at issue herein were its employees. See Composite Exhibit "G."

[8] The Creditors can produce other similar documents. The Exhibit provided is merely an example for the Court's edification.

[9] This number was derived from the list of former delivery drivers produced by the DEBTOR in the *Cox* matter. Creditors have not filed it to protect the confidential information listed therein. Creditors have no objection to producing the document for an *in camera* inspection should the Court so desire.

**H. The APPLIANCE DIRECT enterprise has common upper level management, officers, directors, ownership and stockholders.**

The APPLIANCE DIRECT enterprise has common upper level management, officers, directors, ownership and stockholders. *See* Exhibit "C," ¶ 9; Exhibit "D," pg 3.

**I. The DEBTOR shares credit lines with other entities making up the APPLIANCE DIRECT enterprise.**

A search of the UCC filings for the DEBTOR reveals that its shares credit lines with several other entities making up the APPLIANCE DIRECT enterprise. *See* Exhibit I.[10] Remarkably, DEBTOR did not list the any UCC creditor on the mailing matrix. Thus, concealing the filing of this case from those creditors and protecting those lines of creditor from being shut down or withdrawn.

## ARGUMENT AND MEMORANDUM OF LAW

Apparently, the DEBTOR and the entire APPLIANCE DIRECT enterprise believe they can play fast and loose with this Court. Clearly, the reason for the DEBTOR to file bankruptcy is to evade payment to the Creditors and other employees who currently have judgments against the DEBTOR, while at the same time maintain unfettered access to its credit lines with other creditors not named or provided notice of this bankruptcy. Conspicuously absent from the DEBTOR's mailing matrix are the names of any creditors from which the APPLIANCE DIRECT enterprise maintains UCC agreements. This is so despite the fact that the DEBTOR has open and current UCC agreements on file with the State of Florida with Cisco Systems Capitol Corporation; US Bancorp; White Consolidated Industries, Inc.; Electrolux Home Products, Inc.;

---

[10] For the sake of brevity Creditors have only provided one example with this Motion. However, Creditors can provide further examples during any evidentiary hearing on this Motion.

and, Whirlpool Corporation. *See* Exhibits "I" and "J." When coupled with the DEBTOR's last minute name change it becomes apparent that the DEBTOR is attempting to utilize these proceedings for the purpose of evading only those liabilities and obligations that it chooses to evade. DEBTOR apparently believes it can engage in creditor selectivity. The myth of creditor selectivity is untrue. Pursuant to 11 U.S.C. § 521 and Bankruptcy Rule 1007, a debtor must file Schedules disclosing financial information fully, completely, accurately and honestly. A debtor may not pick and choose which assets and liabilities to disclose. *Poolquip-McNeme, Inc. v. Hubbard,* 96 B.R. 739 (Bankr.W.D.Tex.1989). "Once a person elects to avail himself of the benefits of the federal bankruptcy laws by the filing of a petition, he can no longer expect to have any financial secrets." *In re Trout,* 108 B.R. 235 (Bankr.D.N.D.1989).

Amazingly, the DEBTOR seeks bankruptcy protection yet allows the APPLIANCE DIRECT enterprise to continue to utilize its assets for pecuniary gain. Clearly, if the DEBTOR was truly bankrupt **all** business activities related to the DEBTOR and use of its assets should have ceased upon the filing of its Voluntary Petition. Instead, they continue even as this Motion is being filed. The use of assets and the business activities of the DEBTOR and the APPLIANCE DIRECT enterprise did not cease because they cannot be untangled. Thus, all of the entities making up the APPLIANCE DIRECT enterprise should be consolidated into this proceeding.

The Eleventh Circuit has recognized this Court's equitable authority to substantively consolidate corporate entities when (1) there is a substantial identity between the entities to be consolidated; and (2) consolidation is necessary to avoid some harm or realize some benefit. *Eastgroup Properties v. Southern Motel Assoc., Ltd.*, 935 F.2d 245, 249 (11th Cir. 1991). Substantive consolidation may be based on a finding that it would be more equitable to

all parties to allow consolidation under circumstances of the case, by showing that the affairs of the entities are inextricably intertwined or that creditors dealt with them as a single economic unit. It does not require a finding of fraud or an intent to hinder and delay creditors. *See In re Reider,* 31 F.3d 1102 (11th Cir. 1994). Substantive consolidation may be limited to certain classes of claims, specific property, or may be appropriately conditioned. *See In re Steury,* 94 B.R. 553, 557 (Bankr.N.D.Ind.1988); *In re Cooper,* 147 B.R. 678, 682 (Bankr.D.N.J.1992); *In the Matter of Continental Vending Machine Corp.,* 517 F.2d 997, 1001 (2d Cir.1975); *cert. denied sub nom. Talcott v. Wharton,* 424 U.S. 913, 96 S.Ct. 1111, 47 L.Ed.2d 317 (1976); *In re Parkway Calabasas, Ltd.,* 89 B.R. 832, 837 (Bankr.C.D.Ca.1988), *aff'd* 949 F.2d 1058 (9th Cir.1991). Before ordering consolidation however, a bankruptcy court must conduct a searching inquiry to ensure that consolidation yields benefits that would offset the harm it inflicts on objecting parties. Moreover, the proponent must show substantial identity between the entities to be consolidated, and that consolidation is necessary to avoid some harm or to realize some benefit. *Auto-Train, supra* at 276; *In re Snider Bros., Inc.,* 18 B.R. 230 (Bankr.D.Mass.1982). Once the proponent has made the required prima facie showing, the burden shifts on the objecting party to show (1) that it has relied on separate credit of one of the entities to be consolidated; and (2) that it will be prejudiced by consolidation. *In re Optical Technologies, Inc.,* 221 B.R. 909 (Bankr.M.D.Fla.1998). Factors to consider whether the proponent has made the required prima facie showing are as follows: (1) presence or absence of consolidated financial statements for entities whose estates are to be consolidated; (2) unity of interest and ownership; (3) existence of parent and intercorporate guarantees on loans; (4) degree of difficulty in segregating and ascertaining individual assets and liability; (5) existence of transfers of assets without formal observance of corporate formalities; (6) commingling of assets and

business functions; and (7) profitability of consolidation at single physical location. *Optical Technologies, supra* at 913.

Substantive consolidation has been ordered under similar circumstances. *In re Gainesville P-H Properties, Inc.*, 106 B.R. 304 (Bankr.M.D.Fla. 1989) (Chapter 7 cases of owner and operator of motel chain substantively consolidated in that they had common ownership, used same employees and physical facilities, commingled funds, and paid each other's unsecured debts.). Here, there is substantial identity between the entities to be consolidated and their business activities—especially as applied to the Creditors--are so entangled as to require substantive consolidation.

## CONCLUSION

There can be no doubt that the Creditors employment involved the entire APPLIANCE DIRECT enterprise and not solely the DEBTOR. Thus, consolidation should be ordered as to all creditors or, in the alternative, only as to the class of creditors to which the Creditors belong. Without consolidation, the Creditors will never receive the monies they earned from the sweat and labor provided to the entities making up the entire APPLIANCE DIRECT enterprise.

Pursuant to § 105 of the Bankruptcy Code, 29 U.S.C. § 216(b), § 448.08 of the Florida statutes, and any other relevant sections, Codes or Statutes, the Creditors hereby respectfully request that the issue of attorney's fees and costs be reserved for determination by the Court.

WHEREFORE, Creditors respectfully request this Court to enter an Order substantively consolidating the assets and liabilities of the APPLIANCE DIRECT enterprise into the Debtor's estate effective on the date the Debtor filed its Voluntary Petition pursuant to Chapter 7 of the Bankruptcy Code on the grounds that the related corporate entities making up the enterprise ignored corporate formalities, commingled funds and assets, conducted intercorporate

transactions sufficient to warrant substantive consolidation, and such other and further relief as the Court mat deem necessary and appropriate.

        Respectfully submitted,

        /s/ L. Todd Budgen

        _____

        L. Todd Budgen

        Florida Bar No. 0296960
        P.O. Box 3229
        Orlando, FL 32802-3229
        Phone:  (407) 313-1115
        Fax:  (407) 313-1119
        tbudgen@mybankruptcyfirm.com

# CERTIFICATE OF SERVICE

       I HEREBY CERTIFY that a true copy of the foregoing has been sent via either Electronic Transmission or U.S. Mail this 22nd day of June, 2010 to:

Trustee:
George E. Mills, Jr.
P.O. Box 995
Gotha, FL 34734-0995

Debtor(s):
GROJ of the West, Inc.
c/o Kenneth D. Herron, Jr.
1851 West Colonial Drive
Orlando, FL 32804

Debtor:
GROJ of the West, Inc.
404 S. Harbor City Blvd.
Melbourne, FL 32901

Creditors:
Yervant Cox
7419 Little Pond Court
Orlando, FL 32810

       /s/ L. Todd Budgen
       _____
       L. Todd Budgen